[Mobile & Ohio Railroad Co. v. George.]

# Mobile & Ohio Railroad Co. *v.* George.

*Action by Employe against Employer, for Damages on account of Personal Injuries.*

1. *Averments of negligence, as at common law.*—In an action against a railroad company, to recover damages for personal injuries sustained by plaintiff while on the railroad track, a count which avers that he was on the track "at the instance and request of defendant, and it was defendant's duty so to manage and operate its engines and trains on said track as not to injure him, but, disregarding this duty, defendant negligently ran over and injured plaintiff with one of its engines," shows a good cause of action at common law, without regard to statutory provisions giving an action to the employé against his employer for injuries recieved while in the service.

2. *Same; under statutory provisions.*—When a recovery is sought under the third sub-division of the statute (Code, § 2590), for an "injury caused by reason of the negligence of any person in the service of the master or employer," to whose orders or directions plaintiff was bound to conform, did conform, and was thereby injured, and these facts are averred, it is not necessary to state in what particular or respect the orders or directions were negligent; but good pleading, *it seems*, requires that the name of the person giving the orders or directions should be stated, though the point is not decided.

3. *Same; negativing contributory negligence.*—If a recovery is sought under the fifth sub-division of the statute, on the ground that the injury was caused by the negligence of the engineer in charge of the train, while plaintiff was on the track attempting to couple cars, it is not necessary to aver that the engineer knew, or by the exercise of reasonable diligence might have known, that plaintiff was between the cars, nor any other particular acts or omission constituting the negligence complained of; nor is it necessary to negative contributory negligence on the part of the plaintiff.

4. *Same.*—If a recovery is sought under the first sub-division of the statute, on the ground that the injury was "caused by reason of a defect in the ways, works, machinery," &c., used in the business of the employer, it must be averred in the words of the statute, or in substance, that the defect arose from, or was not discovered and remedied owing to the negligence of the defendant, or of some other person intrusted by him with the duty of seeing that the ways, works, &c.,were in proper condition; and an averment that the defendant "negligently used in its business a steam-engine which was out of order, so that it could not be stopped promptly," followed by an averment that plaintiff was injured "on account of the neglectively defective condition of the engine," is not sufficient.

5. *Evidence admissible under one of several counts.*—When evidence is admissible under one of the several counts in the complaint, it can not be excluded from the jury on motion.

6. *Evidence showing defective condition of engine.*—Under a count which avers that the engine used in the yard at the time plaintiff was injured, while engaged in uncoupling cars, was not provided with a platform, or other device, on which brakemen could stand while engaged in the service, it is competent for him to show that the

| 94 | 199 |
| 94 | 604 |

| 94 | 199 |
| 95 | 144 |

| 94 | 199 |
| 97 | 226 |

| 94 | 199 |
| 98 | 152 |
| 98 | 290 |
| 98 | 574 |

| 94 | 199 |
| 100 | 194 |

| 94 | 199 |
| 103 | 168 |

| 94 | 199 |
| 107 | 652 |
| 109 | 250 |
| 110 | 152 |
| 110 | 199 |

| 94 | 199 |
| 112 | 498 |
| 113 | 515 |
| 114 | 187 |
| 114 | 215 |

| 94 | 199 |
| 124 | 410 |
| 125 | 248 |
| 125 | 593 |

| 94 | 199 |
| 130 | 470 |
| 130 | 472 |

| 94 | 199 |
| 133 | 226 |

| 94 | 199 |
| 134 | 302 |
| 134 | 557 |

| 94 | 199 |
| 135 | 648 |

| 94 | 199 |
| 137 | 241 |
| 137 | 255 |

| 94 | 199 |
| 138 | 560 |
| 138 | 576 |

| 94 | 199 |
| 141 | 194 |

| 94 | 199 |
| 144 | 165 |
| 144 | 213 |

switch-engine ordinarily used in the yard was provided with such platform, but was temporarily at the shop for repairs; that a road-engine, with pilot attached, and a flat car in front of it, which obviated the necessity of standing on the ground while coupling or uncoupling, was at first substituted, and that this was withdrawn a day or two before the accident.

7. *Evidence showing negligence of engineer.*—Under a count which alleges that the injury was caused by the negligence of the engineer in charge of the engine and cars, plaintiff may prove that the fireman was handling the engine at the time, as tending to show negligence on the part of the engineer in permitting him to do so.

8. *Expert evidence*—A witness who has been in the service of a railroad company, "as switchman and about the yard," for twenty years, may testify as an expert to the difference in danger between using a road-engine, when coupling or uncoupling cars, with or without a flat car attached, especially when he states the facts on which his opinion is based; and an expert may also testify, though a non-expert can not, that railroad men consider a road-engine dangerous for that service.

9. *Statutory liability of employer, for injuries to employe; known risks incident to service.*—The statute giving an action against the employer, for injuries to the employé while engaged in the service (Code, § 2590), has no application to the known risks and dangers of the service against which human skill and caution can not provide, but renders him liable for injuries resulting from his own negligence, express or imputed, in the particular cases stated; nor does it relieve the employé from the duty of using ordinary care for his own protection in the service.

10. *Same; contributory negligence of employe.*—If there are two apparent ways of discharging the required service, one more dangerous than the other, the employé is bound to select the latter, and is guilty of such negligence as will bar an action for damages, if he selects the former and is thereby injured; and if the danger is so imminent and apparent, in either way, that a careful and prudent man would not incur the risk, he can not recover, unless the evidence shows that the injury was caused by the reckless, wanton, or willful negligence of the defendant's employés.

11. *Same; injuries caused by conforming to orders of superior.*—When the plaintiff claims that he was injured by obedience to the orders of a superior whom he was bound to obey, he must prove special orders or directions in the matter complained of; but, if the special order was to uncouple the cars, it is not necessary to aver and prove that, in doing so, he was instructed to go in between the cars, whereby he was injured.

12. *Same; variance.*—If the complaint, or a count therein, alleges that the plaintiff's injuries were caused by a defect in the engine, and that it was so out of order that it could not be stopped promptly, this is matter of description, and must be proved as alleged.

13. *Same; contributory negligence.*—Plaintiff's own negligence is not a defense to an action for damages, unless it contributed to his injury; and a charge which assumes that it did so contribute, is an invasion of the province of the jury.

14. *Issue on defective plea.*—When issue is joined, without demurrer or other objection, on a plea which is defective, the plaintiff can not take advantage of its defects by a request for instructions to the jury, nor by a motion to exclude evidence.

15. *Accidental injuries.*—For accidental injuries incidental to the service, the employer is not responsible, either at common law or under the statute.

16. *Difference between common-law and statutory liability; variance.*

[Mobile & Ohio Railroad Co. v. George.]

Under a count which alleges a common-law liability, on the ground that plaintiff was on defendant's railway track by invitation, and was injured by the negligence of defendant's servants, a recovery can not be had on proof of a statutory liability of employer to employé.

17. *Charge as to liability under one of several counts.*—When the complaint contains several counts, charges requested instructing the jury that, on certain facts hypothetically stated, they "must return a verdict for the defendant under" each count, are obnoxious to criticism, if not properly refused, because liable to convey the idea that a separate verdict as to each count must be returned.

18. *Measure of damages for personal injuries.*—In an action to recover damages for personal injuries which are permanent in their nature, a recovery may be had for the disabling effects of the injury both past and prospective; and in estimating the damages, loss of time and incapacity to do as profitable labor after as before the injury, as well as mental and physical suffering, are pertinent and legitimate factors.

19. *Exception to parts of charge.*—A general exception to parts of the general charge asserting two distinct propositions, one of which is correct, is not available on error.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by James George against the Mobile & Ohio Railroad Company, to recover damages for personal injuries sustained by plaintiff while engaged in defendant's service as a brakeman; and was commenced on the 27th August, 1889. The accident occurred on the 3d February, 1889, while the plaintiff, who was a brakeman, was attempting to uncouple an engine from some cars in the railroad yard; and the injuries received necessitated the amputation of both of his feet. The jury gave him a verdict for $19,547.20.

The original complaint contained twenty-five counts, and two others were added by amendment; but the twenty-fourth count was struck out, and demurrers were sustained to all of the others except the first, nineteenth, twenty-first, twenty-third, twenty-sixth and twenty-seventh, which were as follow:

(1.) Plaintiff claims of defendant $75,000 damages, for that on the 3d February, 1889, defendant was a railway corporation, and was using and operating a steam-engine on its track in the State of Alabama; "and plaintiff was on defendant's said railroad track at the instance and request of defendant, and it was defendant's duty to manage and operate its engines and trains upon said track so as not to injure plaintiff while so upon said track; but defendant, disregarding its said duty in the premises, negligently run over and injured plaintiff with one of its engines, and thereby caused him great pain and suffering, both physical and mental, and plaintiff lost his time, and was disfigured, and disabled for life from earning a living."

[Mobile & Ohio Railroad Co. v. George.]

(19.) For that plaintiff was a corporation managing and operating a railroad, and defendant was a brakeman in its employment, "and was, while in the performance of his duties as such brakeman, run over by one of defendant's engines and injured by reason of the negligence of a *switchman* in the service or employment of defendant, to whose orders or directions plaintiff was, at the time of the injury, bound to conform, and did conform; and plaintiff avers that his said injuries resulted from his having so conformed, to-wit: said switchman negligently ordered plaintiff to uncouple certain cars from an engine, although said engine was so constructed that plaintiff could not uncouple said cars without going between the engine and said cars; and plaintiff conformed to said orders, and went between said cars and uncoupled them, and in so doing was run over by said engine, and was injured," &c.

(21.) This count was the same as the nineteenth, except that the injury was charged to have resulted "from the negligence of the yard-master, a person in the service or employment of defendant, to whose orders plaintiff was bound to conform, and did conform." &c.; and it contained no averment as to the construction of the engine requiring him to go in between the engine and the cars.

(23.) This count alleged that the injury was caused, while the plaintiff was in the performance of his duties as brakeman, "by reason of the negligence of an engineer in charge or control of one of defendant's engines, in this, to-wit: that while plaintiff was uncoupling said engine from one of defendant's cars, in the performance of his duties as such brakeman, said engineer negligently run said engine forward, and knocked plaintiff down," &c.

(26.) This count alleged that it was defendant's duty to furnish for the use of the brakemen in its employment, and for their protection in the discharge of their duties in uncoupling cars, "fit and proper engines, and to exercise due care to keep such engine in fit and proper condition for such uses;" that, in disregard of this duty, "defendant negligently used in its said business a steam-engine or locomotive which was out of order, so that it could not be stopped promptly when making said couplings or uncouplings; that on said 3d February, 1889, it became and was plaintiff's duty as a brakeman to go between said engine and cars and uncouple them in the yard, and he did so in the performance of his duty, and while between them, and by reason of said negligently defective condition of said engine it could not be and was not stopped in proper time, and by reason of said defect ran over and injured plaintiff," &c.

(27.) This count alleged that it was the duty of the plaintiff and other brakemen in the defendant's service to go in between the cars, or between the engine and cars, for the purpose of coupling or uncoupling them, and it was defendant's duty "to use due care in furnishing for their use and protection in that business an engine with a platform, or other device, upon which brakemen could stand while so coupling or uncoupling the engine and cars in and about the yard;" that defendant, in disregard of this duty, "negligently used in its said business an engine which was not provided with such platform or other device;" and that on said 3d February, 1889, when it became and was defendant's duty to uncouple the engine from certain cars in the yard, "by reason of said engine not being provided with a platform, or other device, he was obliged to walk between the engine and cars, and by reason of said defective condition of said engine, while plaintiff was between said engine and cars in the discharge of his duties, said engine ran over and injured him," &c.

Demurrers were interposed to each of these counts, on various grounds, all of which were overruled. The causes of demurrer assigned to the *first count* were: (1) "because it does not show in what capacity plaintiff was on defendant's track, whether as employè or a stranger, so that the legal measure of defendant's duty to him does not appear;" (2) "because defendant's duty to plaintiff is not shown by any allegation of fact in said count;" (3) "because there is no allegation of fact informing defendant of the character of the negligence it is required to meet;" (4) "because the negligence charged is the mere conclusion of the pleader;" (5) "because the allegations are too uncertain and insufficient to constitute a cause of action." The grounds of demurrer to the *nineteenth count* were: (1) "because it is not shown in what particular, or in what respect, said switchman was negligent;" (2) because it is not alleged "that the construction of the engine was negligent or defective;" (3) because "it is not alleged that there is any other plan for constructing cars or engines so that they can be uncoupled without a brakeman going in between them;" (4) "because it is common knowledge that cars can not be coupled or uncoupled to and from an engine by any person without going in between them;" (5) "because it is not alleged that the engine was defectively constructed;" (6) "because said count, though in the language of the statute, does not allege any facts or circumstances which bring the case within the provisions of the statute;" (7) "because it contains no allegations of negligence which present an issuable fact." To the *twenty-first count*, (1) "because it is not shown in what particular, or

[Mobile & Ohio Railroad Co. v. George.]

in what respect, said yard-master was negligent;" (2) "because it is not shown in what particular, or in what respect, the order of said yard-master was negligent;" (3) "because it is not alleged that going in between the engine and cars is not the usual and customary method of uncoupling cars from an engine, nor that there was any other safer method by which said cars could be uncoupled;" (4) because said count "shows that plaintiff's injuries were the direct result of an accident;" (5) "because it does not allege any facts or circumstances which bring the case within the provisions of the statute." To the *twenty-third count,* "because it is not alleged that the engineer knew that plaintiff was in between the engine and cars, nor is it shown that he did not receive the signal to move the engine forward." To the *twenty-sixth count,* (1) "because it fails to allege whether said engine was out of order when first used by defendant in its said business, or whether it afterwards became out of order and unfit for use;" (2) "because said count does not allege that the defendant, or any other person superior to plaintiff engaged in defendant's employment, knew of the defective condition of said engine, or might have known of the same by reasonable or ordinary diligence;" (3) "because it is not alleged in what respect or particular said engine was defective;" (4) "because it is not shown what the defect was which obstructed or interfered with the stopping of the engine;" (5) "because the defect in said engine is not pointed out, so that defendant may either admit or deny the same." To the *twenty-seventh count,* (1) "because it is not shown that it is the usage and custom of all well regulated railroads to furnish their employés, engaged in coupling and uncoupling cars in the yard, engines with platforms or other devices thereto attached;" (2) "because it is not shown that it was not the duty of the plaintiff to couple and uncouple engines and cars in the yard which did not have platforms or other devices thereto attached;" (3) "because it is not alleged that defendant undertook and agreed to furnish plaintiff exclusively an engine with a platform or other device attached, to do the switching in said yard;" (4) "because it is not shown that plaintiff only contracted, while in defendant's service as brakeman, to couple and uncouple cars to an engine with a platform or other device thereto attached;" (5) "because no facts are stated whereby it is made to appear that it was defendant's legal duty to furnish plaintiff, when in said yard, an engine with a platform or other device attached for the purpose of coupling and uncoupling cars;" (6) "because it is not shown that defendant does not use engines in said yard, in moving cars from one place to another therein, by having

them coupled and uncoupled to engines which do not have platforms or other devices attached to them;" (7) "because it is not alleged that defendant knew, or might have known by the exercise of reasonable diligence, that said engine was without a platform or other device;" (8) "because the allegations of said count show that plaintiff knew that said engine was without a platform or other device."

The demurrers to these several counts being overruled, the defendant pleaded to each of them not guilty, and specially to the last count, in substance, (2) "that said engine was constructed in the same manner as most of the engines in defendant's use and service, along the line of its railroad and frequently in its yards, were constructed; and that said engine was safely and properly constructed, and of the same pattern and standard as most of the engines used in defendant's service; and that said engine was not defective, or out of repair, but was in safe and proper condition and repair;" and that defendant did not agree, nor was it defendant's legal duty, to furnish plaintiff with an engine having a platform or other device attached; (3) that the switch-engine generally used in the yard, and which had a platform attached, was out of repair and sent to the shops to be repaired, and, having no other switch-engine to supply its place temporarily, used an engine which was in good condition, safely and properly constructed, and of the same pattern and standard as most of the other engines used in defendant's service, and frequently used in and about its yards.

On the trial, the plaintiff testified in his own behalf, that he had been in the employment of the defendant about five years, at first in the shops, and afterwards as switchman in the yards, where his duty required him to couple and uncouple cars and engines under the orders of the engineer, or person in charge; that a switch-engine was generally employed in the yards in that service, but the one in use had been sent to the shop for repairs, a week or more before he received his injuries, and its place was at first supplied by an ordinary road-engine, to which a flat car was attached, but this flat car was withdrawn by the yard-master a day or two before the accident; that a switch-engine had a platform attached, on which a brakeman (or switchman) could stand while coupling or uncoupling cars; that when a road-engine was used, which had no platform or other device attached, a flat car was used in connection with it, which obviated the necessity of the brakeman standing on the ground between the cars and engine; that Jim Lyon was the engineer in charge at the time he was hurt, and he was acting under Lyon's orders in un-

coupling the cars from the engine; that his left heel was caught by the pilot, and the engine ran over and crushed his feet; that the engineer jumped down, and attempted to pull him from under the engine, while the fireman moved it backwards and forwards. The defendant objected and excepted to almost every question and answer of this witness, and particularly his statements as to the different kinds of engines used in the yard, and as to the fireman handling the engine at the time of the accident; and an exception was also reserved to the refusal of the court to allow him to be asked, on cross-examination, why he had quit working in the shops and taken service as a brakeman. Ellis George, a brother of the plaintiff, who said that he had been in the defendant's employment, as switchman, brakeman, &c., for ten years or more, was allowed to testify, against the objection and exception of the defendant, that "most railroad men considered a road-engine dangerous for coupling and uncoupling cars." William Davis, another witness for plaintiff, who had been in the defendant's service about the shops and yards since 1869, was allowed to testify, against the defendant's objection and exception, to the different kinds of engines used in the service of coupling and uncoupling, and to explain the danger incident to their use for this purpose.

The defendant excepted to the following portions of the general affirmative charge given by the court: (1.) "Plaintiff says the proof ought to satisfy you that the injury resulted from the defendant using an unsafe and unfit engine for the purposes of switching. . . If he has proved reasonably to your satisfaction that it was his duty as switchman to uncouple such engine and car, and that he was injured by reason of the unfitness of the locomotive for the purpose aforesaid, he would be entitled to recover." (2.) "If you find the defendant guilty, plaintiff is entitled to recover what his services have been proved to be worth, from the time of his injury, or what he could have earned but for his injury, from the time of such injury to such time as he may reasonably expect to live, less what he may earn, if he earn anything in his present condition. . . Another element of damages is the wounded feelings of the plaintiff—his physical and mental suffering from his injury. There is no measure of proof of such damages: it is a matter of inference to be drawn by the jury from the manner and causelessness of the wrong."

The court also charged the jury, on request of the plaintiff, as follows: "If the jury believe from the evidence that plaintiff, on the 3d February, 1889, was in the defendant's employment as a yard-switchman, and it was his duty as such

to go in between defendant's engine having a pilot in front and one of the cars, and to uncouple them while in motion; and that while so between said engine and car in the performance of his duty, and without any negligence on his part, the engineer in charge of the engine negligently and suddenly sent the engine forward at a quicker rate, and thereby caused the pilot to catch plaintiff's legs or foot, or to strike him and throw him down, and that the engine then ran over plaintiff and injured him, they ought to find a verdict for plaintiff."

The defendant then requested the following charges in writing, duly excepting to the refusal of each:

(1.) "If they believe from the evidence that there was no switchman superior to the plaintiff in the service of the defendant, whose orders the plaintiff was bound to obey, who ordered plaintiff to go in between the engine and car to be uncoupled, and if they further believe from the evidence that said engine was not defectively constructed, then, under count nineteen of the plaintiff's complaint, the jury will return a verdict for the defendant."

(2.) "If they believe from the evidence that the yard-master in the service of the defendant, to whose orders plaintiff, at the time of the injury, was bound to conform, did not order plaintiff, at the time of his injury, to go in between the engine and car to uncouple the same; and if they further believe from the evidence that it was a part of plaintiff's duty, when entering the service of the defendant, to uncouple cars from an engine constructed similar to the one to which was attached the car he was attempting to uncouple when injured, then, under the 21st count of plaintiff's complaint, they will return a verdict for the defendant."

(3.) "If they believe from the evidence that, at the time the plaintiff received his injury, while engaged in uncoupling a car from an engine, the engineer in charge and control of said engine did not negligently run said engine forward and over the said plaintiff, and thereby injure him, then, under the 23d count of plaintiff's complaint, they will return a verdict for the defendant."

(4.) "If they believe from the evidence that the locomotive engine, at the time plaintiff sustained an injury, was not out of order, and was in suitable and serviceable condition, then, under the 26th count of the plaintiff's complaint, they must return a verdict in favor of the defendant."

(5.) "If they believe from the evidence that the locomotive engine in use at the time the plaintiff sustained his injury, was constructed upon a like standard and pattern, and in the same manner as most of the engines are constructed and in

use in the service of the defendant, to which cars are coupled and uncoupled on its line of railroad from Mobile, Alabama, to East St. Louis, Illinois, and frequently in its said yards, then, under count number 27 of the plaintiff's complaint, they will return a verdict in favor of the defendant."

(6.) "Although they may believe from the evidence that it was the legal duty of the defendant to furnish the plaintiff a locomotive engine to be used in its yards at Mobile, Alabama, to which was attached a platform or other device, upon which the plaintiff as a brakeman could stand while coupling and uncoupling cars to and from said engine when moving said cars from place to place in said yard; and if they further believe from the evidence that the defendant did furnish a locomotive engine to which was attached a platform or other device upon which plaintiff as a brakeman could stand while coupling and uncoupling cars to and from said engine, and moving said cars from place to place in said yard; and that said engine with the platform or other device, upon which the plaintiff could stand while coupling and uncoupling cars, became out of repair and unserviceable, and it was necessary to place said engine in the repair shops to be put in order and made serviceable; and that defendant did not have any other engine, constructed as the one out of repair, that it could spare from its other yards, to be used in said Mobile yard; and that defendant furnished to its employés in its said yard, in lieu of said locomotive engine constructed with a platform which was sent to the shops for repair, an engine which was constructed of the same pattern or standard of most of the engines used in the service of the defendant, and which were frequently used in the service of the defendant, and which were frequently used in and about its said yards, then, in that event, under the 27th count of the plaintiff's complaint, they must return a verdict for the defendant."

(7.) "If they believe from the evidence that the plaintiff, in entering the service of the defendant as brakeman, assumed to perform as a part of his duties the coupling and uncoupling of cars to an engine made and constructed upon the pattern of the engine in use at the time he received his injuries, namely, with a pilot and draw-bar, and if they further believe from the evidence that he performed this part of his duty without any protest or notice to his superior officers that it was dangerous; and if they further believe from the evidence that, while performing such duties, namely, uncoupling a car attached to the engine in use at the time he received his injuries; and that his injuries were the result of the perils and dangers incident to the performance of that portion of his duties, then they will find a verdict for the defendant."

[Mobile & Ohio Railroad Co. v. George.]

(9.)  "If they believe from the evidence that the injuries received by James George were the direct results of an accident incident to the business in which he was engaged, then, in that event, they will return a verdict for the defendant."

(10.)  "If they believe from the evidence that the injuries sustained by James George resulted from the ordinary dangers incident to the service he was performing in defendant's employment, then they will return a verdict for the defendant."

(12.)  "It was the duty of the plaintiff to take into account the surroundings and perils attendant upon the nature of the service in which he was engaged at the time he claims to have received his claimed injuries, and to bestow such care and watchfulness as an ordinary prudent person would have exercised under like circumstances in reference to their own safety; and if the jury further believe from the evidence that the plaintiff failed and neglected, at the time he went in between the engine and car, in the yard at Mobile, Alabama, for the purpose of uncoupling the car from the engine, to bestow that degree of care, watchfulness and caution in respect to his own safety in view of the surrounding danger that an ordinarily careful and prudent person would have exercised under like circumstances, then the jury must find in favor of the defendant."

(13.)  "If they believe from the evidence that it was apparently and obviously dangerous for the plaintiff to go in between the engine and car for the purpose of uncoupling a car from said engine, in view of the surrounding circumstances, unless the plaintiff took the necessary precautions to protect himself against the apparent danger; and if the jury further believe from the evidence that the plaintiff did not at the time take the necessary steps and precautions to protect himself against the said apparent and obvious danger in view of the surrounding circumstances, they are instructed to find a verdict for the defendant; unless the jury further believe from the evidence that he received his said injuries from the negligence of the engineer, or the negligence of the yard-master, or the defective condition of the engine."

(14.)  "To entitle the plaintiff to recover by virtue of the employers' statute of the State of Alabama, he must aver and prove a case within the provisions and operations of the statute.  In this respect, the plaintiff holds the affirmative of the statutory provisions relied upon in his complaint, and on which his right of recovery depends.  And the court further instructs the jury, that the general rule is that the burden of proof is on the party holding the affirmative."

(15.)  "If they believe from the evidence that it was mani-

festly dangerous of itself for James George to uncouple the engine from the car, on account of its having been coupled with the draw-bar, then it was the duty of the plaintiff to exercise that degree of care and caution commensurate with such manifest danger of uncoupling the draw-bar from the car; and if they further believe from the evidence that the plaintiff failed and neglected to exercise that degree of caution and prudence that was commensurate with the manifest danger at the time he received his injury, then the court instructs them to return a verdict for the defendant."

(16.)  "If they believe from the evidence that James George used that which was dangerous in a careless and negligent manner, this would be contributory negligence on his part to such an extent as to defeat his right of recovery, and they will return a verdict for the defendant."

(17.)  "Before they can return a verdict in favor of the plaintiff under the first count of plaintiff's complaint, they must believe from the evidence that James Lyons, locomotive engineer, in charge and control of the engine that ran over the plaintiff, was incompetent to properly handle said engine by reason of some physical defect, and that said physical defect was known to the defendant, or might have been known to said defendant by the exercise of reasonable diligence; and they must further believe from the evidence that the said physical defect of said James Lyons, in control of said engine, was unknown to the said James George, and could not have been learned by him by the exercise of reasonable diligence."

(18.)  "Under the first count of plaintiff's complaint, and the evidence submitted in said cause, the plaintiff, and the locomotive engineer, James Lyons, were fellow-servants engaged in one common employment and under one common employer; and, before they can return a verdict in favor of the plaintiff under said first count of said complaint, they must believe from the evidence that said James Lyons, locomotive engineer, was incompetent to safely handle said locomotive engine, and that said incompetency was known to the defendant, or could have been ascertained by the exercise of reasonable diligence, and that said incompetency of said James Lyons, engineer, was unknown to the said James George, and could not have been discovered or ascertained by the said James George, by the exercise of reasonable diligence."

(19.)  "If they believe from the evidence that the said James Lyons was incompetent from any cause to safely handle the locomotive engine at the time said James George was injured, and said incompetency was known to the plaintiff, and he continued in the service of the defendant; then the court

[Mobile & Ohio Railroad Co. v. George.]

instructs them that, under the first count of said complaint, they will return a verdict in favor of the defendant."

(19a.)  "Under the evidence submitted in this cause, they will return a verdict in favor of the defendant under the first count of plaintiff's complaint."

(20.)  "Under the evidence submitted in this cause, they will return a verdict in favor of the defendant under the nineteenth count of plaintiff's complaint."

(21.)  "Under the evidence submitted in this cause, they will return a verdict in favor of the defendant under the twenty-third count of plaintiff's complaint."

(22.)  "Under the evidence submitted in this cause, they will return a verdict in favor of the defendant, under the twenty-sixth count of plaintiff's complaint."

(23.)  "Under the evidence submitted in this cause, they will return a verdict in favor of the defendant, under the twenty-seventh count of plaintiff's complaint."

(24.)  "If they believe from the evidence that James Lyons, locomotive engineer, in charge of and controlling the engine at the time it ran over the plaintiff in this case, had previously to that time been examined and licensed by a board of engineers appointed by the Governor of the State of Alabama, under an act to require locomotive engineers in this State to be examined for license by a board to be appointed by the Governor for the purpose; then the court instructs them that this is *prima facie* evidence of the qualification of the said James Lyons to perform the duties of a locomotive engineer in the State of Alabama."

(25.)  "Under the evidence. submitted in this cause, they will return a verdict in favor of the defendant."

(26.)  "If they believe from the evidence that the plaintiff was injured by reason of a defect in the engine, as laid in the first count of plaintiff's declaration, and if they further believe from the evidence that said defect was known to plaintiff as well as defendant, and that said plaintiff continued in the service without making any complaint about said defect, and was injured, then they must find for the defendant under said first count."

The assignments of error, 49 in number, embrace all the rulings above shown on the pleadings and evidence, charges given, and refusal of charges asked.

E. L. RUSSELL, for the appellant, submitted an elaborate printed argument, in which, insisting on all the assignments of error, he discussed the pleadings and evidence, in connection with the charges given and refused; but no brief of his points

[Mobile & Ohio Railroad Co. v. George.]

and authorities, if any was filed, has come to the hands of the Reporter. The main points urged in his printed argument, with the authorities cited in support of them, were these: (1.) The first count of the complaint was not framed under any particular clause of the statute, but sought to enforce a common-law liability; and neither its averments, nor the evidence offered in support of it, authorized a recovery.—*Railroad Co. v. Holborn*, 84 Ala. 135; *Railway Co. v. Smith*, 59 Ala. 248; *M. & O. Railroad Co. v. Thomas*, 42 Ala. 672; *Edwards v. Railway Co.*, L. R. 5 C. P. 445; *Moss v. Pacific Railway Co.*, 8 Amer. Rep. 126; *Eureka Co. v. Bass*, 81 Ala. 200; Wood's Master & Servant, § 422. (2.) The other counts were framed on statutory provisions, and each was demurrable for some one or more of the reasons specially assigned; nor was the evidence adduced in support of any one of them sufficient to authorize a recovery. A case strictly within the terms of the statute must be proved, and the proof must strictly correspond with the allegations, though framed with unnecessary particularity.—*L. & N. R. R. Co. v. Davis*, 91 Ala. 487; *Railway Co. v. Holborn*, 84 Ala. 133; *L. & N. Railroad Co. v. Orr*, 91 Ala. 548; *L. & N. R. R. Co. v. Coulton*, 86 Ala. 129, and cases there cited. (3.) The statute does not relieve the employè from the consequences of his own negligence, nor make the employer liable for injuries resulting from the known risks of the employment.—*Railway Co. v. Holborn*, 84 Ala. 133; *L. & N. Railroad Co. v. Orr*, 91 Ala. 548; *Railway Co. v. Walters*, 91 Ala. 435; 68 Ill. 545; 28 Mich. 440; 32 Md. 411.

GREGORY L. & H. T. SMITH, *contra*.—(1.) *As to the rulings on the pleadings.* This court will not consider any ground of demurrer not specifically assigned.—*Jacques v. Horton*, 76 Ala. 238; *Lakeside Land Co. v. Dromgoole*, 89 Ala. 505; 3 Brick. Digest, 444, § 574. It was not necessary to allege in the first count the special capacity in which plaintiff was on defendant's track: if he was on the track by invitation, the law fixed the degree of care to be exercised towards him, whether he was an employè or a stranger.—*O'Brien v. Tatum*, 84 Ala. 186; *Railway Co. v. Holborn*, 84 Ala. 133; *Railroad Co. v. Yarbrough*, 83 Ala. 241. It is sufficient to state the facts which show defendant's duty towards plaintiff, and that defendant negligently ran over him.—*Railway Co. v. Lazarus*, 85 Ala. 456; *Railroad Co. v. Jones*, 83 Ala. 376; *Railroad Co. v. Carloss*, 77 Ala. 443; *Hall v. Posey*, 79 Ala. 85. The *quo modo* of the negligence need not be alleged.—*Railway Co. v. Crenshaw*, 65 Ala. 566; *Leach v. Bush*, 57 Ala. 145.

[Mobile & Ohio Railroad Co. v. George.]

It was not necessary to allege that the defendant knew of the defect in the engine, or might have known it by the exercise of reasonable diligence, since knowledge is implied in the averment that the defendant negligently used defective machinery, and this averment was sufficient.—*Hall v. Railroad Co.*, 87 Ala. 711; *Railroad Co. v. Bradford*, 86 Ala. 578, and authorities last above cited. Nor was it necessary for the plaintiff to negative the fact that he knew, or by the exercise of reasonable diligence might have known, the defect or negligence complained of.—*Railroad Co. v. Bradford*, 86 Ala. 574. It is immaterial whether the injury was caused by a defect in the engine which existed when it was first bought and used, or which arose after it had been used for some time: it was equally the defendant's duty to furnish safe machinery in the first instance, and to keep it in a safe condition while in use.—*Railroad Co. v. Allen*, 78 Ala. 501; *Railroad Co. v. Wilson*, 85 Ala. 272; Wood on Master & Servant, 705. Contributory negligence on the part of the plaintiff was defensive matter, which it was not necessary to negative in the complaint.—*Railroad Co. v. Hanlon*, 53 Ala. 70; *Railway Co. v. Crenshaw*, 65 Ala. 566. The fact that many well regulated railroad companies use similar engines in the service, is also defensive matter.—*Railroad Co. v. Propst*, 83 Ala. 518; *Railroad Co. v. Hall*, 87 Ala. 708. Under the statute, the employé does not assume the dangers incident to the service, which arise out of the cases enumerated in the statute.—*Railway Co. v. Holborn*, 84 Ala. 133; *Railroad Co. v. Walters*, 91 Ala. 435. (2.) *As to the rulings on evidence.* On motions to exclude evidence, the grounds of objection were stated in but one or two instances; and this court will not notice such general objections, except for irrelevancy or illegality apparent on its face.—*Dreyer v. Lewis*, 57 Ala. 551; *Steele v. Tutwiler*, 57 Ala. 113; *Cotton Seed Oil Co. v. Perry*, 85 Ala. 158; *Carlisle v. Killebrew*, 89 Ala. 234; *March v. England*, 65 Ala. 275. When a particular ground of objection is stated, all other grounds are waived.—3 Brick. Digest, 444, § 547. Evidence is relevant and admissible when it throws light on a material issue.—*Mattison v. State*, 55 Ala. 224. Evidence as to the use of a flat car in connection with a road-engine, in uncoupling cars, was relevant on the issue of negligence; and plaintiff's effort to procure one tended to disprove contributory negligence on his part.—*Railway Co. v. Holborn*, 84 Ala. 133. (3.) *As to the charges given and refused.* The exception to portions of the general charge given by the court is taken to two distinct propositions, and can not avail if either proposition is correct.—*Johnson & Thornton*

*v. Allen & Jemison,* 78 Ala. 387; *Dick v. State,* 87 Ala. 61; 3 Brick. Dig. 80, §§ 34, 37. But both propositions are in fact correct.—*Railroad Co. v. McLendon,* 63 Ala. 272; *Railroad Co. v. Harris,* 67 Ala 6; *Railroad Co. v. Yarbrough,* 84 Ala. 241. The several charges requested, instructing the jury that they must return a verdict for the defendant under each one of the counts named, left them no discretion to return a general verdict, and required inconsistent verdicts unless explained. They were objectionable in form, and calculated to mislead the jury.—*Cooper v. State,* 88 Ala. 110.

CLOPTON, J.—The first six assignments of error go to overruling the demurrers to the first, nineteenth, twenty-first, twenty-third, twenty-sixth and twenty-seventh counts of the complaint; the twenty-fourth count having been struck out by amendment, and the demurrers to the others sustained. In each count, the averment of negligence is general. In actions based on *mis-feasance* or *non-feasance,* the rule, as settled by our decisions, is, that when the complaint avers the facts from which the duty arises, a general averment of negligence is sufficient under our system of pleading; the pleader is not required to specify the particular acts or omissions, from which the conclusion of negligence is deducible.—*Leach v. Bush,* 57 Ala. 145; *Ensley Railway Co. v. Chewning,* 93 Ala. 24; 9 So. Rep. 458.

The first count of the complaint is not framed under any clause of the statute. It avers that plaintiff was on the track at the instance and request of defendant—that is, by invitation. From this fact springs the duty to exercise reasonable care and precaution to avoid injuring him. The facts being stated from which the duty legally arises, a general averment, that the defendant negligently ran over and injured the plaintiff with one of its engines, is sufficient. The count sets forth a substantial cause of action.

The nineteenth and twenty-first counts are framed under sub-division 3 of section 2590 of the Code, which gives a right of action to an injured employè, "when such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, to whose orders or directions the servant or employè, at the time of the injury, was bound to conform, and did conform, if such injuries resulted from having so conformed." On the principles stated above, it is not necessary in a complaint founded on this clause of the section, to aver in what particular or respect the orders or directions were negligent. It may be, that good pleading requires the name of the person, to whose orders the employè

[Mobile & Ohio Railroad Co. v. George.]

is bound to conform, to be stated, so as to give the defendant notice thereof, and present as an issuable fact whether such person was in the service or employment of defendant, or whether plaintiff was bound to conform to his orders. This, however, not being assigned as ground of demurrer, we do not decide, and allude to it merely to prevent any inference of approval of a complaint omitting the name.

On the same principle, in a complaint framed under sub-division 5 of the section—"when such injury is caused by reason of the negligence of any person in the service or employment of the master or employer, who has charge or control of any signal, points, locomotive, engine, switch, car or train upon a railway, or any part of the track of a railway"—it is not essential to aver that the engineer knew, or might have known by the exercise of reasonable diligence, that plaintiff was between the engine and car, or any other particular acts or omissions constituting the negligence complained of. Neither need the complaint negative the fact that plaintiff knew, or by reasonable diligence might have known, the defect or negligence charged ; contributory negligence is defensive matter, which must be pleaded and proved by defendant. L. & N. R. R. Co. v. Hawkins, 92 Ala. 241 ; 9 So. Rep. 271. The demurrers to the nineteenth, twenty-first, and twenty-third counts were properly overruled.

The third ground of demurrer to the twenty-sixth count is, that it fails to allege that defendant, or any person superior to plaintiff, engaged in the employment of defendant, knew of the condition of the engine, or might have known of the same by reasonable or ordinary diligence. This count is framed under sub-division 1 of the section, which gives a right of action, "when the injury is caused by reason of any defect in the condition of the ways, works, machinery or plant connected with, or used in the business of the master or employer." The statute, however, further provides : "Nor is the master or employer liable under sub-division one, unless the defect arose from, or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer and intrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition." In C. & W. Railway Co. v. Bradford, 86 Ala. 574, this provision was held not to relate to defensive matter, but to the negligence of the defendant, and that facts would probably have to be averred, which would show that the defect was within the statutory limitations. In this, as in the other enumerated classes of cases arising under the statute, negligence on the part of the em-

ployer is the essential basis of liability to answer in damages to an injured employè—without negligence, there can be no recovery. A complaint drawn under this clause, which does not allege in the words of the statute, or in substance, that the defect arose from, or was not discovered and remedied owing to the negligence of defendant, or of some person intrusted with the duty of seeing that the ways, works, machinery or plant were in proper condition, fails to set forth a good and substantial cause of action. As to the particularity with which the facts should be averred, it is said in *L. & N. R. R. Co. v. Hawkins, supra*, "There is no reason, however, for requiring a greater degree of particularity in the averment of negligence under this statute, than is required with respect to any other negligence counted on for a recovery of damages; and the facts to be alleged in either class of cases are little, if any more, than the mere conclusions of the pleader, leaving the factors which enter into, and support the conclusions, to be adduced in evidence." An allegation, pursuing the words of the statute, or substantially the same, is sufficient; but this much is requisite. The averment in the count, that "defendant negligently used in its business a steam-engine or locomotive which was out of order, so that it could not be stopped promptly," can not be regarded as the equivalent of the statutory language. The engine may have been negligently used in the business, and yet the defect complained of not have arisen from, or been discovered and remedied owing to the negligence of defendant, or of some person intrusted with the duty of seeing that the works and machinery were in proper condition. The adverb *negligently*, as employed in the count, qualifies the manner in which the engine was used, and, fairly construed, does not relate to the origin of the defect, or to the failure to discover and remedy it; and even when taken in connection with the subsequent averment, that plaintiff was injured on account of "the neglectively defective condition of the engine," is not the equivalent of an averment that the defect arose from, or was not discovered and remedied, owing to the negligence of defendant, or of any person in its employment—is insufficient to bring the case within the statutory limitations.—*Seaboard Manuf. Co. v. Woodson, ante,* 143. The demurrer to the twenty-sixth count should have been sustained. The twenty-seventh count, which is framed under the same clause of the statute, is not obnoxious to any of the objections made in the assignments of grounds of demurrer.

The next fourteen assignments of error go the rulings on evidence. If the evidence objected to by defendant is admissible under any count of the complaint, there is no error in

refusing its exclusion. The twenty-seventh count avers that the engine used in the yard at the time of plaintiff's injury, was not provided with a platform, or other device, on which brakemen could stand to couple and uncouple. The evidence tends to show that defendant ordinarily used in the yard a regular switch-engine having a step in front and rear, on which brakemen could stand. The switch-engine, being out of order, was at the shops for repairs, and a road-engine with pilot attached substituted. In front of the road-engine, and attached thereto, a flat car was used until Thursday or Friday evening before plaintiff was injured on Sunday; this flat car had been removed from the yard by the yard-master. There is also evidence that the use of a flat car obviated the necessity of brakemen standing on the ground when coupling or uncoupling. It was manifestly the duty of defendant to furnish as safe and suitable appliances as was practicable and reasonable under the circumstances for the protection of brakemen. In view of the other evidence, and this duty, testimony that defendant ordinarily used a particular kind of engine in the yard, and customarily used a flat car when a road-engine was substituted therefor, and that a flat car was attached to the road-engine for a time, was admissible.

The eleventh assignment of error, to the effect that plaintiff was allowed to testify that the fireman was handling the engine at the time he was injured, does not seem to be sustained by the record. As we understand his evidence, he did not testify that the fireman was handling the engine, but simply that he stopped it. On the contrary, he testified that Lyon, the engineer, was in charge of the engine. However, if conceded that he did so testify, the evidence was admissible under the twenty-third count, as tending to show negligence on the part of the engineer in permitting the fireman to handle the engine at such time and under such circumstances.

The testimony as to the consideration which moved plaintiff to quit the shops and take employment as a brakeman, was properly excluded; it does not throw light on any proper or material inquiry. The witness Davis, who is *prima facie* shown to be an expert in such matters, was competent to testify to the difference in danger between using a road-engine with and without a flat car, especially when he states the facts on which his opinion is based. But it was not admissible for the plaintiff to testify that the railroad men considered a road-engine dangerous for uncoupling. This is mere hearsay; the experts themselves should have been called. The record discloses exceptions to other portions of the evidence, but they are not assigned for error.

The remaining assignments of error, twenty-eight in number, go to charges given, and the refusals of charges asked by defendant. In considering them we shall not regard the order in which they are numbered. The general principles regulating, in all the classes of cases defined by the statute, the rights and duties of the employè, and the liability of the employer, and also the defenses available to him, as declared by our former decisions, may be summarized as follows: Though the statute has no application to the known risks and dangers of the service or employment against which human skill and caution can not provide; when an employé sustains injury by reason of any defect in the ways, works, machinery or plant, or the injury is caused by the negligence of any of the persons mentioned, and under the circumstances provided by the statute, it abrogates the common-law rule, that the employè impliedly contracts to assume the known and ordinary risks incident to his employment. In neither of the classes of cases, however, does any liability for injuries caused by the known and ordinary risks arise, without negligence on the part of the employer, or of some person intrusted with superintendence, or authority to give orders or directions, or having charge or control of some signal, point, locomotive, engine, car or train upon the track of the railway, or by reason of the act or omission of some person done or made in obedience to the rules, regulations or by-laws of the employer, or to particular instructions of a person delegated with authority in that behalf. The scope and operation of the statute is, to make the employer answerable in damages for an injury caused by his own negligence, or the negligence of a co-employè of the same or superior grade, in the enumerated classes of cases. In all cases, the employè is bound to use ordinary care for his own protection. If there are two ways of discharging the service, apparent to the employè, one dangerous and the other safe, or less dangerous, he must select the safe or less dangerous way, and can not recover for an injury sustained, when the danger is imminent, and so obvious that a careful and prudent man would not incur the risk under the same circumstances.—*Highland Ave. & Belt R. R. Co. v. Walters*, 8 So. Rep. 357; *L. & N. R. R. Co. v. Orr*, 91 Ala. 548; 8 So. Rep. 360; *Mobile & B. Railway Co. v. Holborn*, 84 Ala. 133. There is evidence tending to show that plaintiff could have stood on the ground and uncoupled the car without going between the engine and car. If this be true, and it was apparent to plaintiff, and he nevertheless went between the engine and car, this was negligence, sufficient to defeat a recovery, if it contributed to his injury, notwithstanding there

may have been negligence on the part of defendant, unless
his injury was caused by reckless, wanton, or willful negli-
gence; under such circumstances it can not be said that
plaintiff used ordinary caution to prevent injury.

To entitle plaintiff to recover by virtue of the statute, he
must both aver and prove a case coming within one of the
enumerated classes of cases.    Under the nineteenth and
twenty-first counts, it is incumbent on plaintiff to show (1) that
the person who gave the orders or directions was in the service
or employment of defendant; (2) that he was bound to con-
form to the orders of such person; (3) that he did conform to
such orders, and that his injuries resulted from having so con-
formed; and (4) that the person was negligent in giving the
orders or directions.    The clause under which these counts
are framed evidently refers to *special* orders or directions, in
respect to the particular service in which the employè is en-
gaged at the time of the injury, as distinguished from a gen-
eral order or direction in reference to the discharge of his
general service, growing out of the nature and scope of his
employment.    But, in case of a special order to uncouple,
there need be no express order "*to go between the engine and
car.*"    Such direction will be implied from a special order to
uncouple at a time and under circumstances rendering going
between the engine and car necessary to conform to the order.
There being no evidence that the yard-master gave plaintiff
any order or direction to uncouple the car from the engine at
the time of his injury, he has failed to establish one of the
essential statutory propositions, and is not entitled to recover
under the twenty-first count.    But charge 2, requested by de-
fendant, proceeds on the theory, that an express order, at the
time of the injury, *to go between the engine and car* to un-
couple, is requisite, and also that defendant may set up in
such case the defense that plaintiff assumed the ordinary risks
incident to his employment, though his injury may have been
caused by the negligence of the yard-master.    For this reason
the charge was properly refused.    The same observations
apply to charges 7 and 10.    Also, if the evidence fails to
show that plaintiff was bound to conform to the orders of the
switchman, he is not entitled to recover under the nineteenth
count.    Charge 1 should have been given, if not objectionable
in form, which we shall notice hereafter.

The twenty-sixth count alleges that the engine was so out
of order that it could not be stopped promptly.    The pleader
having specified the particular defect, it becomes matter of
description, which it is incumbent on plaintiff to prove with
equal particularity, as also that he was injured by reason of

such defect. If, therefore, the evidence fails to satisfy the jury that the particular defect existed, or that plaintiff was injured by reason thereof, he is not entitled to recover under that count.—*L. & N. R. R. Co. v. Coulton*, 86 Ala. 129. This is the legal proposition asserted in charge 4.

While charges 12, 13, 15 and 16 may assert correctly general legal propositions, they are defective in assuming as matter of law, that plaintiff's want of care and caution contributed to his injury. Plaintiff may have been guilty of negligence as hypothesized, and yet such negligence not have contributed to his injury. Whether it did or not so contribute was a question of fact for the determination of the jury.

Charges 5 and 6 are founded on the predicate, that the manner in which most of the engines used by defendant in coupling and uncoupling cars on the line of its road, and frequently in its yards, is the standard of defendant's duty to furnish safe and suitable appliances for the protection of its employès; this is not the law. But appellee insists, that these charges should have been given under the issue joined on the two special pleas numbered 2 and 3—pleas of confession and avoidance. The first alleges in substance, that whilst it was true that the engine which was in use at the time plaintiff was injured did not have a platform, or other device, upon which plaintiff could stand while coupling and uncoupling, the engine in use at that time was constructed in the same manner as most of the engines were constructed in use by the defendant to which cars were coupled and uncoupled along its line of railroad; that the engine used at the time of plaintiff's injury was properly and safely constructed, and of the same pattern and standard as most of the engines used by defendant, was not defective or out of repair, but was in good condition and proper repair, at the time plaintiff received his injuries. The third plea alleges substantially the same facts, and contains the additional averments, that the switch-engine used in the yard had become out of repair and useless for switching purposes, whereby it was necessary to send it to the shops for repair, and that defendant had no other engine to put in the yard. Whether these pleas presented a valid and substantial defense, it is unnecessary to inquire; plaintiff did not demur to them, but accepted the issues tendered by the pleas. Though they may have presented informal or immaterial issues, plaintiff having joined issue thereon, it would have been a reversible error to refuse to give charges framed in reference to such issues, and the tendencies of the evidence to establish the truth of the pleas. If the material averments be established, defendant is entitled to a verdict, whether the

pleas are sufficient or insufficient. But charges 5 and 6 omit from the hypothesis the facts alleged in the pleas, that the engine was properly and safely constructed, and was in good condition and proper repair, and could be safely used in its yards in coupling and uncoupling cars. For this reason, they were properly refused.

There is evidence tending to show that plaintiff stepped in between the engine and the car to pull the pin, and, failing to pull it, gave the engineer the signal to slack; in response to which the engineer, the engine having been reversed, threw the lever ahead, and as he did so plaintiff stumbled, and threw himself across the pilot, the heel of his shoe having caught on the top of the guard-rail. If such be the facts, the engineer was without negligence, and the injury to plaintiff was accidental. It does not require argument, or the citation of authorities, to support the proposition, that defendant is not responsible for an injury, the direct result of an accident incident to the business in which plaintiff was employed. This is the proposition asserted in charge 9, which should have been given.

In *Mobile & Birmingham Railway Co. v. Holborn, supra,* we laid down the rule, that in cases under the statute the plaintiff holds the affirmative of each of the statutory propositions on which his right of recovery depends, and the general rule applies that the burden of proof is on the party holding the affirmative. The same rule was subsequently declared in *L. & N. R. R. Co. v. Davis,* 8 So. Rep. 552. Charge 14 asserts this rule, but is objectionable because argumentative.

It being undisputed that plaintiff was an employè of defendant, and a fellow-servant of the engineer in charge of the engine, which it is alleged was negligently run over him, he· is not entitled to recover under the first count, as we have construed it to be a suit by a person not in the employment of defendant, but lawfully on the track. The liability for an injury to an employè, caused by the negligence of a fellow servant, rests on entirely different principles from the liability to a stranger on the track by license or invitation. In the case of an injured employè, the complaint must contain other and distinct averments, whether seeking to enforce the common-law, or the statutory liability of the employer. The variance between the allegations of the first count and the proof is fatal.

Charges 20, 21, 22 and 23 are charges upon the effect of the evidence under separate and distinct counts; and charge 25 under the whole complaint. There being conflict in the evidence in some respects, and inferences to be drawn there-

from, these charges were properly refused. While some of the charges, such as 1, 3 and 4, assert correct legal propositions, they conclude with a direction to "*return a verdict in favor of defendant*" under the special and separate count in reference to which they are framed. The complaint, as amended, contains six counts, as to each of which a similar charge was separately asked. Had there been but one count, or, being several, had the charge upon the effect of the evidence applied to the whole complaint, there could be no objection to such conclusion of the charge; but, when there are two or more counts, the phraseology is subject to criticism. It is calculated to impress the jury with the idea that a separate verdict must be returned as to each count, though under some they may find for the plaintiff; its tendency is to mislead or confuse, and requires explanation. As this objection may be obviated on another trial, we shall express no opinion whether it authorized the refusal of the charges, and merely suggest that the safer practice would be to adopt the usual form of expression in such cases.

On the principles we have heretofore stated, the charge given at the instance of plaintiff asserts a correct legal proposition. Charges 17, 18, 19, 24 and 26 asked by defendant, are abstract; the principles of law therein asserted have no application to the first count. Charge 13 is somewhat involved and argumentative.

Where the injury is permanent, the plaintiff, in actions of this character, may recover compensation for the disabling effects of the injury past and prospective. In estimating the damages, the loss of time, and the incapacity to do as profitable labor as before the injury, as well as the mental and physical suffering caused by it, are pertinent and legitimate factors. *S. & N. R. R. Co. v. McLendon*, 63 Ala. 266; *Ala. Gt. So. R. R. Co. v. Yarborough*, 83 Ala. 241. It may be that the portion of the general charge, to the effect that plaintiff is entitled to recover "what his services have been proven to be worth from the time of the injury, or what he could have earned but for the injury, from the time of such injury, to such time as he may reasonably expect to live, less what he may earn, if he earn anything in his present condition," does not accurately state the necessary and legal damages; but the exception is taken to two separate and distinct propositions of the general charge as a whole, the last of which is a correct proposition. Where such is the case, the exception is not available.

Reversed and remanded.